1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9

JENNIFER L. SCOTT, et al.,

10

Plaintiffs,

CASE NO. C20-1550-RSM-MAT

11

v.

12

DERIC K. MONROE, et al.,

REPORT AND RECOMMENDATION

13

Defendants.

14
15

INTRODUCTION

16      Plaintiffs Jennifer L. Scott and her children filed a Motion to Remand this matter to King

17 County Superior Court.  (Dkt. 10.)   Plaintiffs also request sanctions and oral argument.

18 Defendants Deric Monroe, Jane Doe Monroe, and Swift Transportation Co. ("Swift") oppose the

19 motion.  (Dkt. 22.)  The Court, for the reasons set forth below, finds oral argument unnecessary

20 and recommends the motion to remand and request for sanctions be GRANTED, and this matter

21 REMANDED to King County Superior Court following a determination of the proper amount of

22 sanctions imposed.

23 / / /

REPORT AND RECOMMENDATION
PAGE - 1

BACKGROUND

After a failed mediation with Swift, plaintiffs commenced this personal injury action in King County Superior Court on April 23, 2019. (Dkt. 1-1.) The action arose out of a June 13, 2018 collision in which a semi-truck driven by Deric Monroe, within the scope of his employment with Swift, rear-ended Jennifer Scott's vehicle. (*See id*. at 3-4.) The collision occurred near Spangle, in Spokane County, Washington, on a portion of Washington State Route 195 where N.A. Degerstrom, Inc. ("Degerstrom") was performing construction work. (*Id*.) Scott sustained severe injuries, including, but not limited to, a traumatic-brain injury, broken bones, and burns, and required multiple surgeries, other extensive medical treatment, and rehabilitation.

Plaintiffs, residents of Whitman County, Washington, named as defendants Deric and Jane Doe Monroe, residents of Utah; Swift, a resident of Arizona and Delaware; and Degerstrom, a Washington Corporation with its principal place of business in Spokane Valley. (*Id*. at 2.) Plaintiff identified jurisdiction as proper in King County Superior Court for the State of Washington pursuant to RCW 2.08.010, RCW 46.64.040, and other applicable laws and, because Swift transacts business in King County, the chosen venue as appropriate under RCW 4.12.025, RCW 4.92.010(4), and other applicable laws. (*Id*. at 3.)[1]

Plaintiffs alleged that, at the time of the collision, Degerstrom flaggers required traffic approaching the construction site to rapidly decelerate, but signage leading up to the site, and the

---

[1] The presiding superior court judge denied Swift's motion to change venue, as well as a motion for reconsideration, upon finding sufficient ties to King County and no basis to override plaintiffs' choice of a statutorily authorized venue. (Dkt. 21-3 at 160-61 & Dkt. 21-4 at 26-32.) The court noted Jennifer Scott received the majority of her medical treatment in King County, the majority of testifying healthcare providers and other experts resided in King County, that King County was both significantly more convenient for damages witnesses and no more inconvenient than Eastern Washington for the majority of parties in the case, including Swift and its witnesses, and that Degerstrom's counsel was located in King County and did not object to venue. (*Id*.)

REPORT AND RECOMMENDATION
PAGE - 2

design and operation of the site itself, did not sufficiently allow traffic to slow at a reasonable rate and avoid the possibility of a rear-end collision. (*Id*. at 3-4.) They alleged Deric Monroe (hereinafter "Monroe") failed to slow, causing the semi-truck he was operating to strike and crush the rear end of Scott's vehicle and, "[a]ccording to the State of Washington Police Traffic Collision Report associated with the accident, . . . Monroe 'failed to see traffic slowing.'" (*Id*. at 4; *see also* Dkt. 10, Ex. 1 at 7.) Plaintiffs' counsel attests the investigation prior to filing suit also included evidence from Nathan Rose, an accident reconstructionist, establishing a likely deviation from the WSDOT-mandated traffic control plan in the signs/flags/warnings deployed and/or maintained by Degerstrom, and witness statements indicating a warning sign and/or flags were insufficient or had fallen down. (Dkt. 27-1, ¶¶4, 8-9, Ex. 13; Dkt. 10, Exs. 2-3.)

Swift and Monroe submitted an answer admitting Monroe was "a proximate cause" of the collision and alleging comparative fault of a third party/parties over whom Swift had no control or legal responsibility. (Dkt. 10, Ex. 5 at 5, 8.) In responses to plaintiffs' discovery requests, Swift and Monroe similarly admitted Monroe was "a proximate cause" of the collision. (Dkt. 23, ¶12, Ex. C.)

Beginning shortly after filing the lawsuit, plaintiffs sought to depose Monroe. (*See* Dkt. 10, Exs. 7-9.) Defendants canceled a deposition scheduled to occur in September 2019, following the death of Monroe's wife, as well as a rescheduled deposition date of February 4, 2020. (*Id*.; Dkt. 27-1, ¶¶38-41.) The superior court thereafter granted plaintiffs' motion to compel Monroe's responses to discovery requests and to appear for deposition, but the parties agreed to cancel a March 2020 deposition date due to COVID-19. (Dkt. 21-4 at 147-51, 181-82; Dkt. 27-1, ¶42.) In May 2020, the parties agreed to conduct multiple depositions throughout June and early July, including the depositions of Monroe and Rose, the accident reconstructionist, on June 29, 2020.

REPORT AND RECOMMENDATION
PAGE - 3

1    (Dkt. 27-1, ¶47.)  In his deposition, Monroe testified he saw all of the signs placed by Degerstrom

2    leading up to the scene of the crash, knew he should have slowed down in response to each sign,

3    but failed to slow down, causing the collision.  (*See* Dkt. 10-11.)

4        Degerstrom did not file an answer to the complaint and plaintiff did not seek an order of

5    default or default judgment.  (*See* Dkt. 24, ¶5.)[2]  Degerstrom did participate in the litigation, by,

6    for example, responding to and submitting discovery requests, providing a corporate representative

7    for deposition, participating in other depositions, identifying and updating potential witnesses for

8    trial, and joining in Swift's second motion to continue the trial date.  (Dkt. 23, ¶¶17-18, Exs. F &

9    G; Dkt. 21-4 at 45-56, 214-29; Dkt. 27-1 at 6-10, Exs. 14 & 16.)

10       On August 28, 2020, Degerstrom moved for summary judgment, arguing Monroe's

11   testimony he saw the construction/warning signs prior to the accident provided confirmation they

12   had been displayed correctly.  (Dkt. 21-5 at 1-6.)  Degerstrom described Rose as testifying "nothing

13   . . . Degerstrom did was relevant in his mind to the causation of the accident at issue—that the

14   accident happened because Monroe 'disregarded' the signs." (*Id*. at 3-4.)  Plaintiffs conceded that,

15   in light of Monroe's testimony, Rose was unable to offer an opinion Degerstrom's alleged

16   deviation from the traffic control plan caused or contributed to cause the collision in support of a

17   claim of negligence against Degerstrom.  (*Id*. at 45-50.)   The superior court granted summary

18   judgment to Degerstrom on September 25, 2020.  (*Id*. at 120-21.)

19       Defendants Swift and Monroe removed the action to this Court on October 19, 2020 (Dkt.

20   1), eighteen months after the case filing and twenty-one days before trial had been scheduled to

---

22   [2] Through a praecipe, counsel for Swift clarifies a declaration from counsel for Degerstrom contains
     two unauthorized statements and requests the statements be stricken and disregarded.  (*See* Dkt. 26 (striking
23   paragraphs 6 and 7 to declaration at Dkt. 24).)  The Court neither describes, nor cites to the unauthorized
     statements.

REPORT AND RECOMMENDATION
PAGE - 4

commence in superior court on November 9, 2020 (*see* Dkt. 27-1, ¶54).  Defendants assert the propriety of removal based on plaintiffs' bad faith in naming Degerstrom in order to prevent jurisdiction in this Court.  (Dkts. 1 & 22.)  Plaintiffs deny bad faith and move to remand to state court.[3]

### DISCUSSION

 "A civil case commenced in state court may, as a general matter, be removed by the defendant to federal district court, if the case could have been brought there originally." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 134 (2005); *see* 28 U.S.C. § 1441(a). This Court has original jurisdiction over "civil actions where the matter in controversy exceeds the sum or value of $75,000" and where the matter is between citizens of different states.  28 U.S.C. § 1332(a). "[D]iversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff."  *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978).

A defendant must file a notice of removal either (1) "within thirty days after the receipt by the defendant . . . of a copy of the initial pleading," or (2) "[i]f the case stated by the initial pleading is not removable, . . . within thirty days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b).  However, a case may not be removed on the basis of diversity more than one year after commencement of the action unless the district court finds the plaintiff acted in bad faith in order to prevent a defendant from removing the action. 28 U.S.C. § 1446(c)(1).

---

[3] Following a telephone conference with the parties, the Court denied plaintiffs' request to expedite briefing on the motion to remand.  (*See* docket entry dated October 29, 2020.)

REPORT AND RECOMMENDATION
PAGE - 5

The bad faith exception was added to prevent plaintiffs from naming non-diverse parties to actions in an effort to prevent removal to federal court. *Heacock v. Rolling Frito-Lay Sales, LP*, C16-0829-JCC, 2016 WL 4009849 at *2 (W.D. Wash. Jul. 27, 2016) (citing *Heller v. Am. States Ins. Co.*, 2016 WL 1170891 at *2 (C.D. Cal. Mar. 25, 2016)).  It "applies to plaintiffs who join defendants solely to prevent removal, and then dismiss them after the one-year deadline has expired when they could have kept them in the suit." *Id*.  A plaintiff's subjective intent is therefore necessarily relevant to a bad faith analysis. *Id*.

The Ninth Circuit has not defined a standard for a district court's evaluation of the 28 U.S.C. § 1446(c)(1) bad faith exception.  However, "district courts in the Ninth Circuit have stated that 'defendants face a high burden to demonstrate that a plaintiff acted in bad faith to prevent removal.'" *Kolova v. Allstate Insurance Company*, 438 F. Supp. 3d 1192, 1196 (W.D. Wash. 2020) (citing *Heacock*, 2016 WL 4009849 at *3).  Consistent with the requirement to strictly construe the removal statute against removal, courts apply a "'strict standard' and find 'bad faith when a plaintiff fail[s] to actively litigate a claim against a defendant *in any capacity*.'" *Id*. (emphasis retained).

Courts often consider "'[t]he timing of naming a non-diverse defendant, the timing of dismissal, and the explanation given for that dismissal.'" *Id*. at 1196-97.  Factors such as the failure to take discovery may be relevant, but "even 'bare minimum' discovery attempts" have been found sufficient to avoid a bad faith finding. *Id*. at 1197-98 (declining to find bad faith where, *inter alia*, plaintiffs submitted interrogatories pertinent to non-diverse defendant) (cited source omitted).  Moreover, as the "master of [the] complaint", a plaintiff is "entitled to use deliberate tactics to defeat federal jurisdiction." *Heacock*, 2016 WL 4009849 at *3-5.  A plaintiff may thus be motivated in part by a desire to remain in state court. *Id*. ("Heacock may not have been

REPORT AND RECOMMENDATION
PAGE - 6

1    motivated by a desire to collect damages from Tally, but instead in part by a desire to remain in

2    state court. However, the evidence presented by Frito Lay does not demonstrate that this desire

3    was the but-for cause of his actions.")

4            The Court must "strictly construe the removal statute against removal jurisdiction," so that

5    any doubt as to the right of removal is resolved in favor of remanding the case to state court. *Gaus*

6    *v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).  The removing party bears the burden to

7    demonstrate removal was proper. *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*,

8    599 F.3d 1102, 1106-07 (9th Cir. 2010) (citing *Gaus*, 980 F.2d at 567); *Emrich v. Touche Ross &*

9    *Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988).

10   A.    <u>Motion to Remand</u>

11           Defendants here argue the motion for remand should be denied because plaintiffs acted in

12   bad faith to prevent Swift from removing this case within one year of plaintiffs filing suit.  They

13   maintain the absence of any factual basis to assert a claim against Degerstrom in the first instance.

14   They point, for example, to the testimony of Rose as suggesting plaintiffs knew prior to filing suit

15   that Degerstrom played no role in causing the accident.  They assert plaintiffs' failure to engage in

16   any pre-suit negotiations with Degerstrom,[4] seek a default judgment, oppose summary judgment,

17   or seek any meaningful discovery from Degerstrom, and the fact Degerstrom's 30(b)(6) deposition

18   did not occur until July 3, 2020, fourteen months after plaintiffs filed suit.  (*See* Dkts. 23 & 24.)

19   Noting Monroe had already admitted his role as a proximate cause and that Swift admitted to

20

21           [4] Defendants also describe a statement allegedly made by plaintiffs' counsel in mediation in support
22   of their contention plaintiffs named Degerstrom for the sole purpose of defeating federal court jurisdiction.
     Plaintiffs dispute the alleged statement and contend the argument violates an applicable Mediation
     Confidentiality Agreement.  The Court, for the reasons identified by plaintiffs, declines to further address
23   the arguments raised.

REPORT AND RECOMMENDATION
PAGE - 7

vicarious liability before plaintiffs filed suit and never identified Degerstrom as being at fault, defendants maintain plaintiffs now unreasonably feign surprise about Monroe's testimony and implausibly claim to have speculated Swift would assign Degerstrom blame.  However, as discussed below, these arguments and the record in this case do not support a finding of bad faith.

The fact plaintiffs named Degerstrom as a defendant in the complaint, not solely in response to an attempt at removal, argues against a finding of bad faith.  *Kolova*, 438 F. Supp. 3d at 1197; *Heacock*, 2016 WL 4009849 at *4.  Plaintiffs also set forth a factual basis for Degerstrom's inclusion, including the police report noting Monroe's report he had not seen traffic slowing prior to the collision, pre-filing evidence from Rose supporting improper placement of traffic controls and signage, and witness interviews suggesting the inadequacy of warning signs.  These facts support plaintiffs' contention they identified a reasonable cause of action against Degerstrom and anticipated the use of evidence against Degerstrom in an attempt to explain why, at least in part, Monroe failed to slow down in advance of the collision.

The concession Monroe served as *a* proximate cause of the collision did not preclude defendants from arguing or presenting evidence of an additional cause, or a jury finding some portion of fault properly allocated to a third or non-party.  Defendants did not plead or contend Monroe was *the* proximate cause of the collision.  They, in fact, alleged "damages, if any, may have been actually and proximately caused by the negligent and/or intentional conduct of a third party/parties over whom Swift has no control or legal responsibility."  (Dkt. 10, Ex. 5 at 8.)  The later testimony of Monroe and Rose, more than fourteen months after the case filing, necessarily could not have informed plaintiffs' decision at the outset.  Nor is there any suggestion plaintiffs played a role in the failure to earlier secure Monroe's testimony and thereby provide for Degerstrom's dismissal prior to the one-year removal deadline.  If anything, the evidence shows

REPORT AND RECOMMENDATION
PAGE - 8

1   plaintiffs promptly and repeatedly sought to depose Monroe and that delays occurred for reasons

2   entirely beyond their control.

3          This is not a case in which a plaintiff named a diversity-defeating defendant and failed to

4   litigate against or engage that defendant in any discovery.  Plaintiffs served interrogatories and

5   requests for production on Degerstrom with service of the complaint and summons (*see* Dkt. 27-

6   2, Ex. 14), and deposed Degerstrom's corporate representative.  (*See also* Dkt. 27-1, ¶¶32-34, 37

7   (stating that, in addition to informal discovery, Degerstrom produced hundreds of pages of

8   documents and plaintiffs responded to Degerstrom's requests for a statement of damages,

9   admissions, interrogatories, and requests for production).)  Swift, on the other hand, waited until

10  March 2020, eleven months after the case began and shortly before the one-year removal deadline,

11  to serve interrogatories and requests for production on Degerstrom.  (Dkt. 23, ¶17, Ex. F.)  Nor is

12  the timing of the 30(b)(6) deposition suspect; it was scheduled to occur, on the agreement of the

13  parties, only days after the depositions of Monroe, Rose, and twelve other witnesses.  (Dkt. 27-1,

14  ¶47, Ex. 17.)  Degerstrom otherwise actively engaged in the litigation and, plaintiffs maintain,

15  communicated their intent to contribute to any settlement resolving the dispute.  (*See id.*, ¶45.)

16         Contrary to defendants' contention, plaintiffs did not simply assent to Degerstrom's

17  dismissal.  Plaintiffs asserted that, "[a]lthough the evidence tends to prove that Degerstrom

18  deviated from the WSDOT mandated traffic control plan," plaintiffs were "unable to offer an

19  expert opinion that the deviation caused or contributed to cause this crash given the recently

20  obtained testimony and admissions of . . . Monroe." (Dkt. 21-5 at 45-46.)  In other words, plaintiffs

21  reasonably conceded they could not support a claim against Degerstrom in light of Monroe's

22  admission he saw and understood Degerstrom's warning signs, knew he should have slowed down,

23

REPORT AND RECOMMENDATION
PAGE - 9

but failed to do so, and that this failure caused the collision. Plaintiffs' response to the dispositive motion is consistent with both the allegations in the complaint and arguments in favor of remand.

Further, the fact Degerstrom only sought dismissal after securing Monroe's testimony supports a conclusion Degerstrom, like plaintiffs, deemed Monroe's testimony necessary to a determination of the viability of plaintiffs' claim against Degerstrom and/or as to any percentage of fault. Again, defendants do not identify any acts or omissions on the part of plaintiffs that led to the more than fourteen-month period between the case filing and the taking of Monroe's deposition, or the resulting dismissal of the non-diverse defendant more than a year-and-a-half after the case began. As such, neither the timing of, nor explanation for Degerstrom's dismissal support a finding of bad faith. *See, e.g., Kolova*, 438 F. Supp. 3d at 1197 (finding no bad faith where plaintiffs dismissed non-diverse defendant nearly six months after the § 1446(c)(1) one-year period of limitation for removal lapsed and the dismissal resulted from the reversal of an appellate decision plaintiffs relied upon in bringing their suit against that defendant in the first place "—a decision that was beyond Plaintiffs' control.")

Defendants' other arguments similarly lack merit. Neither plaintiffs, nor Swift invited Degerstrom to participate in the pre-suit mediation and the reasons for its absence from mediation appear manifold. (*See* Dkt. 27-1, ¶¶14-18.) It remains that plaintiffs named Degerstrom as a defendant to this case at the outset and that Degerstrom actively participated in the litigation until it secured its dismissal following Monroe's deposition. Plaintiffs' counsel explains the failure to seek a default judgment as owing to the recognition an assessment of defendants' percentages of fault were necessarily contingent on Monroe's testimony, resulting extensions for the filing of an answer provided to Degerstrom as a matter of professional courtesy, and the lengthy, unexpected delays before plaintiffs succeeded in securing Monroe's deposition. (*Id.*, ¶36.)

REPORT AND RECOMMENDATION
PAGE - 10

1    In sum, considering the facts, defendants' high burden, and the requirement to strictly

2    construe the removal statute against removal, defendants do not demonstrate bad faith.  This matter

3    is therefore properly remanded to King County Superior Court pursuant to 28 U.S.C. § 1446(c)(1).

4    B.    Request for Sanctions

5    When a court remands an improperly removed action, it "may require payment of just costs

6    and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C.

7    § 1447(c).  Fees are appropriate when removal lacks "an objectively reasonable basis." *Martin v.*

8    *Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).  "Conversely, when an objectively reasonable

9    basis exists, fees should be denied."  *Id*.

10   Plaintiffs argue defendants knowingly and improperly removed this matter just twenty-one

11   days prior to trial in an attempt to disrupt the case and postpone any trial proceedings, and to

12   inconvenience plaintiffs, their counsel, and witnesses.  They note defendants made no attempt to

13   seek removal earlier through an allegation of fraudulent joinder.  They also observe that

14   defendants' counsel, unlike plaintiffs and their representatives, knew or could have known the

15   content of Monroe's testimony at any time after the collision, could have shared that information

16   with plaintiffs and/or Degerstrom, and could have made Monroe available for deposition well in

17   advance of the § 1446(c)(1) deadline.  Plaintiffs contend defendants' conduct yielded increased

18   costs, the unnecessary expenditure of time and energy, logistical uncertainty, multiple flight and

19   lodging cancellations, significant rescheduling, and loss of the trial date, warranting the imposition

20   of sanctions.  Defendants argue that, because they had a reasonable basis for removal, an award of

21   fees would not be appropriate.[5]

22

23   _____

     [5] Defendants also point to a case in which a court denied attorney fees because of the "unsettled
     state of the law."  *NKD Diversified Enterprises, Inc. v. First Mercury Ins. Co.*, C14-0183, 2014 WL

REPORT AND RECOMMENDATION
PAGE - 11

For the reasons identified by plaintiffs, the Court finds the removal of this matter, eighteen months after commencement of the action and only three weeks prior to trial, objectively unreasonable and sanctions warranted. As requested by plaintiffs, the Court should order defendants to pay the reasonable costs, expenses, and attorney fees plaintiffs incurred to obtain a remand of this case and, as in *MySpine, PS v. USAA Cas. Ins. Co.*, C13-2179, 2014 WL 2860682 at \*5 (W.D. Wash. June 23, 2014), order the parties to meet and confer to determine if they can agree on a payment. The Court should further order that, within fourteen days of the Court's Order, the parties should file a statement in the Court (which will retain jurisdiction for purposes of finalizing a fee and expense award) setting forth their agreement on a payment or, if they are unable to agree, plaintiffs should file a motion for attorney fees, costs, and expenses.[6]

<u>CONCLUSION</u>

Plaintiffs' motion to remand and for sanctions (Dkt. 10) should be GRANTED. This matter should be REMANDED to King County Superior Court following this Court's determination of the proper amount of sanctions based on either a statement of agreement from the parties or a motion from plaintiffs, as described above. The Court should retain jurisdiction to finalize the award of attorney fees, costs, and expenses.

---

1671659 at \*8 (E.D. Cal. Apr. 28, 2014), *report and recommendation adopted*, 2014 WL 2619599 (E.D. Cal. June 6, 2014). However, in that case, the Court also found the defendants had a reasonable basis for removal, *id.*, and the bad faith exception had been enacted only some three years earlier, *see Ehrenreich v. Black*, 994 F. Supp. 2d 284, 288 (E.D.N.Y. 2014) ("The 'bad faith' exception to the one-year limit on removal of diversity cases is a recent amendment to the statute, enacted as part of the Federal Courts Jurisdiction and Venue Clarification Act of 2011.") (citation omitted).

[6] Plaintiffs also assert that an award of sanctions under Rule 11 would be appropriate and suggest that, if removal is not appropriately corrected, they will file a separate motion for Rule 11 sanctions. The Court declines to address this assertion given the absence of any specific argument or motion.

REPORT AND RECOMMENDATION
PAGE - 12

<u>OBJECTIONS</u>

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **<u>January 29, 2021</u>**.

DATED this <u>11th</u> day of January 2021.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 13